O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KITSCH LLC,<br><br>        Plaintiffs,<br><br>        v.<br><br>BLONDE COMET L.L.C.,<br><br>        Defendants. | Case No.: 2:25-cv-11595-MEMF-PVC<br><br>**ORDER GRANTING DEFENDANT'S MOTION TO DISMISS [DKT. NO. 22]** |

Before the Court is a Motion to Dismiss filed by Defendant Blonde Comet L.L.C. Dkt. No. 22. For the reasons stated herein, the Court hereby GRANTS the Motion to Dismiss.

/ / /

/ / /

1

I.    **Background**

A.  **Factual Background[1]**

Plaintiff Kitsch LLC ("Kitsch") is a limited liability company organized under the laws of Delaware with its principal place of business in California. Dkt. No. 19 ¶ 1.[2] The company is a beauty product and accessories manufacturer. *Id.* ¶ 17. Defendant Blonde Comet L.L.C. ("Blonde Comet") is a limited liability company organized under the laws of Minnesota with its principal place of business in Minnesota. *Id.* ¶ 2.

In or around May 2013, Kitsch and Blonde Comet entered into an oral contract under which Blonde Comet would act as a sales representative for Kitsch in various Midwest states, including Minnesota, and Kitsch would pay commissions to Blonde Comet for its sales. *Id.* ¶¶ 4, 18-19. In or around April 2025, Kitsch informed Blonde Comet that Kitsch would be ending their agreement. *Id.* ¶ 22. At the time Kitsch ended the agreement, Kitsch had paid all commissions that were owed to Blonde Comet. *Id.* ¶ 23. Since early April 2025, Blonde Comet has not performed work of any nature in service of Kitsch. *Id.* ¶ 24. On October 29, 2025, Blonde Comet emailed Kitsch alleging that Kitsch owed an additional $93,650 in commissions for sales through the end of 2025. *Id.* ¶ 25; Dkt. No. 19-2, Ex. 1.

B.  **Procedural History**

On December 5, 2025, Kitsch filed a complaint in this Court against Blonde Comet seeking a declaration under 28 U.S.C. § 2201 that Kitsch has not infringed its oral agreement with Blonde Comet. Dkt. No. 1. On January 27, 2026, Blonde Comet filed its first Motion to Dismiss. Dkt. No.

---

[1] Unless otherwise indicated, this memo's factual background is derived from Kitsch's First Amended Complaint. *See* Dkt. No. 19 ("1AC"). For the purposes of this Motion, the memo treats these factual allegations as true. However, at this stage of the litigation, the memo makes no finding on the truth of these allegations, and is therefore not finding that they are indeed true.

[2] All citations to the page numbers of docket filings are citations to the pagination imposed on the original documents. *See* Bluebook Rule B17.1.4.

15. On February 11, 2026, Kitsch filed its First Amended Complaint against Blonde Comet seeking the same declaratory relief. 1AC.

On February 25, 2026, Blonde Comet filed its second Motion to Dismiss for lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim or, in the alternative, to transfer venue to the United States District Court for the District of Minnesota. Dkt. No. 22-1 ("Motion"). Kitsch timely filed its opposition to the Motion on March 11, 2026. Dkt. No. 23 ("Opp'n"). Blonde Comet timely filed its reply on March 18, 2026. Dkt. No. 24 ("Reply").

The Court held a hearing on the matter on April 9, 2026.

## II.   Applicable Law

### A.  Federal Rule of Civil Procedure 12(b)(1)

"Federal courts are courts of limited jurisdiction," and can only hear cases where there is a valid basis for federal jurisdiction. *Richardson v. United States*, 943 F.2d 1107, 1112 (9th Cir. 1991). Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal of an action for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(b)(1). In the context of a Rule 12(b)(1) motion, the plaintiff bears the burden of establishing subject matter jurisdiction. *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010). Rule 12(b)(1) jurisdictional challenges can be either facial or factual. *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). In a facial challenge, the moving party "asserts that the allegations contained in [the] complaint are insufficient on their face to invoke federal jurisdiction." *Id*.

### B.  Federal Rule of Civil Procedure 12(b)(2)

A party may move to dismiss a complaint for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). The party claiming the existence of jurisdiction bears the burden of establishing it. *Mattel, Inc. v. Greiner & Hausser GmbH*, 354 F.3d 857, 862 (9th Cir. 2003). If a court finds that an evidentiary hearing is not required, a plaintiff "need only make a prima facie showing of the

jurisdictional facts." *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008) (internal quotation marks omitted). A plaintiff must "not simply rest on the bare allegations of its complaint" and instead "come forward with facts, by affidavit or otherwise, supporting personal jurisdiction." *Amba Mktg. Sys., Inc. v. Jobar Int'l, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977). Still, uncontroverted allegations in the complaint must be taken as true, and "[c]onflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

To establish personal jurisdiction over a defendant, a plaintiff must show both that the long-arm statute of the forum state confers personal jurisdiction over an out-of-state defendant, and that the exercise of jurisdiction is consistent with federal due process requirements. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154–55 (9th Cir. 2006). California's long-arm jurisdictional statute is coextensive with federal due process requirements, under which a court may exercise jurisdiction over a nonresident party only if that party has "at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'" *Schwarzenegger*, 374 F.3d at 800–01 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be either general or specific. *See Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015). The Ninth Circuit employs a three-prong test to evaluate whether specific jurisdiction exists:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger*, 374 F.3d at 802. The plaintiff bears the burden of satisfying the first two prongs of this test. *Pebble Beach*, 453 F.3d at 1155. The first prong may be satisfied with facts

sufficient to show "either purposeful availment or purposeful direction, which, though often clustered together under a shared umbrella, 'are, in fact, two distinct concepts.'" *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1128 (9th Cir. 2010) (quoting *Pebble Beach*, 453 F.3d at 1155). Courts "generally apply the purposeful availment test when the underlying claims arise from a contract, and the purposeful direction test when they arise from alleged tortious conduct." *Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017).

The purposeful availment requirement is met "if the defendant has taken deliberate action within the forum state or if he has created continuing obligations to forum residents." *Ballard v. Savage*, 65 F.3d 1495, 1498 (9th Cir. 1995). Determining purposeful availment "requires a 'qualitative evaluation of the defendant's contact with the forum state.'" *Harris Rutsky & Co. Ins. Servs., Inc. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1130 (9th Cir. 2003) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)). Although courts consider all relevant factors, the Supreme Court has identified four as particularly instructive: (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' actual course of dealing. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985).

If the plaintiff is able to establish the first two prongs of the specific jurisdiction test, the burden then shifts to the defendant to show why the exercise of personal jurisdiction would not be reasonable and fair under the third prong. *Schwarzenegger*, 374 F.3d at 802.

### C. Choice of Law Analysis

A federal court sitting in diversity must use "the forum state's choice of law rules to determine the controlling substantive law." *Fields v. Legacy Health Sys.*, 413 F.3d 943, 950 (9th Cir. 2005) (quoting *Patton v. Cox,* 276 F.3d 493, 495 (9th Cir. 2002)). "As a default, the law of the forum state will be invoked, and the burden is with the proponent of foreign law to show that the foreign

rule of decision will further the interests of that state." *CRS Recovery, Inc. v. Laxton*, 600 F.3d 1138, 1142 (9th Cir. 2010).

In California, there are two types of analysis for selecting the applicable state law in an action. When the parties have an agreement with a choice of law provision, courts use the analysis outlined in *Nedlloyd Lines B.V. v. Superior Court,* 11 Cal.Rptr.2d 330 (Cal. 1992). *Washington Mut. Bank, FA v. Superior Ct.*, 103 Cal.Rptr.2d 320, 326-27 (Cal. 2001). If there is no choice of law clause, courts apply the governmental interest test. *Id*. at 327. Under this three-step analysis, courts must evaluate (1) whether the substantive laws of each jurisdiction differ as applied to the relevant issue, (2) if they differ, whether a true conflict exists in that each jurisdiction has an interest in having its law applied, and (3) if there is a true conflict, which state's interest would be more impaired if its law were not applied. *Downing v. Abercrombie & Fitch*, 265 F.3d 994, 1005 (9th Cir. 2001). Under the governmental interest test, a court should ultimately apply the law of the state whose interest would be more impaired. *Id*.

### D.  Sales Representatives Agreements

Both California and Minnesota have statutes governing the activity of sales representatives. Minnesota defines a sales representative as "a person who contracts with a principal to solicit wholesale orders and who is compensated, in whole or in part, by commission." Minn. Stat. § 325E.37(1)(d). This statute applies to those who are residents of Minnesota or maintain their principal place of business in Minnesota. *Id*. § 325E.37(6)(a)(1). A sales representative agreement is "a contract or agreement, either express or implied, whether oral or written, for a definite or indefinite period, between a sales representative and another person or persons, whereby a sales representative is granted the right to represent, sell, or offer for sale a manufacturer's . . . goods." *Id*. § 325E.37(1)(e). If a manufacturer alleges a violation of any of the statute's provisions, "[t]he sole remedy . . .  is to submit the matter to arbitration." *Id*. § 325E.37(5)(a). "No manufacturer . . .  shall

circumvent compliance with [this statute] by including in a sales representative agreement a term or provision, whether express or implied, that includes or purports to include . . . an application or choice of law of any other state . . . [or] a choice of venue in any other state." *Id*. § 325E.37(7)(1)-(2).

California defines a wholesale sales representative as "any person who contracts with a manufacturer . . . for the purpose of soliciting wholesale orders . . . [and who is] is compensated, in whole or part, by commission." Cal. Civ. Code § 1738.12(e). If a manufacturer is engaged in business in California and uses a sales representative to solicit orders "at least partially within [California]" for commissions, "the manufacturer . . . shall enter into a written contract with the sales representative." *Id*. § 1738.13(a). "A manufacturer . . . who willfully fails to enter into a written contract as required by [this statute] or willfully fails to pay commissions as provided in the written contract shall be liable to the sales representative in a civil action[.]" *Id*. § 1738.15.

### III.     **Discussion**

For the reasons discussed below, the Court finds that it lacks subject matter jurisdiction as Minnesota Statute § 325E.37 bars Kitsch's claim for relief, and that it lacks personal jurisdiction as Kitsch fails to sufficiently allege that Blonde Comet purposefully availed itself of California.[3] The Court therefore GRANTS the Motion to Dismiss.[4]

/ / /

/ / /

---

[3] For its failure to state a claim argument, Blonde Comet has not complied with procedural requirements under Local Rule 7-5. This rule states that moving papers shall include "[a] brief but complete memorandum in support thereof and the points and authorities upon which the moving party will rely" as well as "evidence upon which the moving party will rely." C.D. Cal. L.R. 7-5. In its Motion, Blonde Comet provides no authorities or analysis as to why this Court should dismiss the 1AC under Federal Rule of Civil Procedure 12(b)(6). The Motion also cites to no record evidence or allegations in the 1AC that show that Kitsch has failed to state a claim. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Accordingly, the Court will not address the merits of whether Kitsch has failed to state a claim.

[4] Because the Court grants the Motion to Dismiss, it need not address Blonde Comet's motion to transfer venue to the United States District Court for the District of Minnesota.

**A. The Court lacks subject matter jurisdiction.**

Blonde Comet argues that under Minnesota Statute § 325E.37, Kitsch is required to pursue arbitration for its claims and cannot seek relief in this Court. Motion at 1; Reply at 1. Kitsch maintains that California law applies to the parties' oral agreement and therefore this Court is the appropriate forum for this action. Opp'n at 10, 13. As it appears that the parties cannot agree on the applicable state law, and finding this issue pertinent to the Court's evaluation of whether subject matter jurisdiction exists, the Court proceeds to conduct a choice of law analysis.[5]

### i. Minnesota law controls.

Since Kitsch filed suit in the Central District of California, Blonde Comet resides in Minnesota, 1AC ¶ 2, and the parties' oral contract contained no choice of law clause, Opp'n at 1, the Court applies California's governmental interest test to determine whether California or Minnesota law applies to this matter.[6] *Fields*, 413 F.3d at 950; *Washington Mut. Bank*, 103 Cal.Rptr.2d at 327. Under this test, the Court must (1) analyze whether the substantive laws of California and Minnesota differ as applied to the relevant issue, (2) if they differ, evaluate whether a true conflict exists in that each state has an interest in having its law applied, and (3) if there is a true conflict, identify and

---

[5] In its Motion and Reply, Blonde Comet argues that Minnesota law should control but offers no choice of law analysis to show why this is appropriate. Kitsch makes note of this absence. Opp'n at 10. As Blonde Comet still put forth the assertion that Minnesota law applies to the parties' relationship, the Court will address the merits of this claim but admonishes Blonde Comet that future failures to provide the relevant law and analysis to support its arguments may prevent the Court from fully considering them and result in the Court's denial of motions.

[6] At the April 9, 2026 hearing, Kitsch argued that the Government interest test is improper and the Court shall apply California Civil Code § 1646. Section 1646 states that "[a] contract is to be interpreted according to the law and usage of the place where it is to be performed; or, if it does not indicate a place of performance, according to the law and usage of the place where it is made." Cal. Civ. Code § 1646. But "section 1646 is to determine the choice of law with respect to the interpretation of a contract." *Frontier Oil Corp. v. RLI Ins. Co.*, 63 Cal. Rptr. 3d 816, 826 (Cal. Ct. App. 2007). It does not preclude the Court from conducting California's governmental interest test, particularly here where the integral dispute between the parties is the relief Kitsch is allowed to pursue. The parties do not appear to dispute the terms of the oral contract and thus, the Court will apply the governmental interest test.

apply the law of the state whose interest would be more impaired if its law were not applied. *Downing*, 265 F.3d at 1005.

The Court finds that Minnesota law applies. First, the substantive laws of Minnesota and California differ as applied to the resolution of conflicts between sales representatives and contracting manufacturers. A material difference of law exists if application of the states' laws would lead to different results. *See McCann v. Foster Wheeler LLC*, 105 Cal.Rptr.3d 378, 391-92 (Cal. 2010); *see also Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 17 Cal.Rptr.2d 713, 718 (Cal. Ct. App. 1993). Under Minnesota law, Kitsch would need to send this matter to arbitration as Kitsch is alleging that Blonde Comet improperly sought further commissions under their oral contract. Minn. Stat. § 325E.37(5)(a); 1AC ¶¶ 30-32. Although Kitsch alleges that California law governs the contract, Minnesota law explicitly bars the application of another state's law to an oral agreement with a Minnesota sales representative. Minn. Stat. § 325E.37(7)(1)-(2). Thus, under Minnesota law, Kitsch would be unable to pursue this action in California.

Under California law, Kitsch is permitted to seek a declaratory judgment for a breach of oral contract. Blonde Comet points to California Civil Code § 1738.15 as the appropriate state law to apply. Motion at 2. But this statute offers no explicit course of remedy for a manufacturer alleging violation of an *oral* contract with a sales representative. The statute instead states that when a manufacturer uses the services of a sales representative to solicit orders "at least partially within [California]," the parties must enter into a *written* contract. *Id*. § 1738.13(a). However, this provision appears inapplicable to this case, as the terms of Kitsch and Blonde Comet's contract were to solicit sales within the Midwest, not California. 1AC ¶ 4. Even if some of the sales were made in California, as Kitsch alleges, the contract was still oral. *Id*.; Opp'n at 1. Furthermore, California law states that if a manufacturer "willfully fails to enter into a written contract" or "willfully fails to pay commissions as provided in the written contract," the manufacturer "shall be liable to the sales representative in a civil action[.]" Cal. Civ. Code § 1738.15. But this provision appears to address a

different problem than that is presented in Kitsch's complaint: Blonde Comet is not filing suit alleging Kitsch willfully failed to pay its commissions; rather, Kitsch is filing suit alleging that Blonde Comet improperly sought these commissions.

Because this California statute is inapplicable to the parties' contract, ordinary contract principles would apply. In California, "[a] disputed oral contract may properly be the subject of a declaratory judgment." *Columbia Pictures Corp. v. De Toth*, 26 Cal. 2d 753, 760 (Cal. 1945); *see also Gaglione v. Coolidge*, 134 Cal. App. 2d 518, 522 (Cal. Ct. App. 1955) ("That declaratory relief may be proper under an oral contract is now established."). Thus, since California law would allow Kitsch to pursue declaratory relief in court—and Minnesota law would not—the first requirement of the governmental interest test is satisfied.

The Court must now turn to the question of whether a true conflict exists in that each state has an interest in having its law applied. The Court finds that a true conflict exists. The provisions of Minnesota Statute § 325E.37 make clear that the statute's purpose is to protect sales representatives who reside in Minnesota. For example, the statute requires manufacturers to meet various conditions before terminating a sales representative agreement, including a showing of good cause and written notice; confers rights to sales representatives upon the termination of a contract; and prohibits the inclusion of certain unfair contract terms in an agreement. *Id*. §§ 325E.37(2)(a)(1), (4), (7). As Blonde Comet is a sales representative residing in Minnesota, Minnesota has an interest in extending these protections to Blonde Comet. 1AC ¶ 2.

California also has an interest in regulating contracts made by its businesses and where some of the sales, as Kitsch alleges, were made in California. Opp'n at 1; *Robert McMullan & Son, Inc. v. United States Fid. & Guar. Co.*, 162 Cal. Rptr. 720, 724 (Cal. Ct. App. 1980) ("Since the contract was made between a California resident and a corporation doing business in California, California has an interest in seeing that such contract is enforced according to the law where it was made."). Thus, as both states have a legitimate interest in applying their laws, a true conflict exists.

The Court must finally turn to the third step of the governmental interest test. *Abogados v. AT&T, Inc.*, 223 F.3d 932, 934 (9th Cir. 2000) ("On the other hand, if more than one jurisdiction has a legitimate interest, 'the court must move to the third stage of the analysis[.]'"). The Court finds that Minnesota law controls as its interest would be more impaired if its law were not applied. *Downing*, 265 F.3d at 1005. Application of California law would frustrate the ability of Minnesota Statute § 325E.37 to protect Minnesota sales representatives like Blonde Comet by effectively rendering subsections (5)(a) and (7)(1) futile, as subsection 5(a) clearly states that parties like Kitsch must pursue arbitration, and subsection 7(1) prohibits circumventing this requirement by asserting in the contract that another state's law should apply. By contrast, California's interest would be less impaired as California Civil Code § 1738.15 imagines little protections for manufacturers like Kitsch. Thus, the third step of the governmental interest test still favors the Court's application of Minnesota law.

        ii.   <u>Minnesota Statute § 325E.37 bars this Court from considering Kitsch's claim.</u>

Minnesota law makes clear that Kitsch's "sole remedy" for alleged violations of its oral agreement with Blonde Comet is to "submit the matter to arbitration", and that Kitsch cannot circumvent this provision by alleging that California law governed its agreement with Blonde Comet. Minn. Stat. §§ 325E.37(5)(a), (7)(1). The 1AC alleges insufficient facts to overcome this bar and Kitsch's opposition cites to no binding authority that would allow this Court to conclude otherwise. Kitsch instead argues that Minnesota Statute § 325E.37 is irrelevant since California's choice of law rules apply. Opp'n at 11. But Kitsch's argument is misplaced and confuses the levels of legal analysis pertinent here. Kitsch is correct that this Court must apply California's choice of law rules—but it is precisely for the purpose of evaluating whether Minnesota Statute § 325E.37 applies to the parties' relationship. Thus, the Court finds that it lacks subject matter jurisdiction over Kitsch's claim for declaratory relief.

**B.  The Court lacks personal jurisdiction.**

The Court also lacks personal jurisdiction over Blonde Comet. Kitsch argues that specific jurisdiction exists as Blonde Comet "repeatedly chose to avail itself of the benefits of doing business with Kitsch." Opp'n at 1. Blonde Comet argues against specific jurisdiction as it is a Minnesota entity with no meaningful contacts with California. Motion at 6. Here, Kitsch carries the burden of establishing (1) that Blonde Comet purposefully availed itself of the privilege of conducting activities in California, and (2) that Kitsch's claim arises out of or relates to Blonde Comet's forum-related activities. *Schwarzenegger*, 374 F.3d at 802; *Pebble Beach*, 453 F.3d at 1155. In evaluating the first prong, the Court may consider (1) prior negotiations, (2) contemplated future consequences, (3) the terms of the contract, and (4) the parties' actual course of dealing. *See Burger King*, 471 U.S. at 479.

The Court finds that Kitsch fails to allege facts sufficient to show purposeful availment. *Brayton Purcell*, 606 F.3d at 1128. Despite Kitsch's insistence that Blonde Comet had extensive contacts with California, these various claims ultimately repackage the same unavailing argument: Blonde Comet entered into and performed its side of a contract with Kitsch, and Kitsch happened to reside in California.

To attempt to satisfy the purposeful availment prong, Kitsch alleges that over the course of their contractual relationship, Blonde Comet had at least five hundred communications with Kitsch by email or phone, Blonde Comet received commissions for the sale of Kitsch products to at least one customer with a billing address in California, and Blonde Comet requested product samples from Kitsch nineteen times and Kitsch shipped the requested goods to Blonde Comet from its warehouse in California. Opp'n at 1, 3, 6-7; Dkt. No. 23-1 ("Thurswell Decl.") ¶¶ 4, 7, 8. Even accepting Kitsch's allegations as true, all these contacts are ultimately grounded in Blonde Comet's contract with Kitsch. But "the plaintiff cannot be the only link between the defendant and the forum," specifically where Blonde Comet did not expressly aim its conduct at California. *Walden v.*

*Fiore*, 571 U.S. 277, 285 (2014). Here, the dispute concerns Blonde Comet's entitlement to commission based upon the parties' oral contract for Blonde Comet to operate as sales representatives for Kitsch in *Minnesota* and other Midwest states. 1AC ¶¶ 4, 19, 22-27. There is no allegation that the contract's terms asked Blonde Comet to solicit sales for Kitsch in California, or that Blonde Comet's actual performance of the contract involved regular or substantial sales to customers in California. *See generally id.* In fact, the parties' contract only imagined that Blonde Comet would assist Kitsch with sales in states throughout the Midwest. *Id.* ¶ 4. And although Kitsch alleges that Blonde Comet received commissions for the sale of products to at least one customer with a California billing address, this single instance falls short of establishing sufficient forum contact, especially since the actual products were shipped out-of-state.[7] Thurswell Decl. ¶ 4.

In sum, the record demonstrates that Blonde Comet's contractual obligations and conduct were directed at Midwest states, not California. As a result, binding authorities do not support exercising personal jurisdiction in the instant action. *Pebble Beach*, 453 F.3d at 1159-60 (finding defendant was not subject to personal jurisdiction where where " there is not a scintilla of evidence indicating" defendant targeted the forum); *Schwarzenegger*, 374 F.3d at 806-07 (holding that defendant was not subject to personal jurisdiction where the at issue advertisement "was expressly aimed at Ohio rather than California"); *Brayton Purcell LLP*, 606 F.3d at 1230 (determining defendant expressly aimed its conduct at the forum where "Recordon knew of Brayton Purcell's existence, targeted Brayton Purcell's business, and entered direct competition with Brayton Purcell").  Accordingly, Blonde Comet's contacts did not "reach out beyond [Minnesota] and create continuing relationships and obligations with citizens of [California]." *Burger King*, 471 U.S. at 473 (quoting *Travelers Health Assn. v. Virginia,* 339 U.S. 643, 647 (1950)).

---

[7] Kitsch does not provide the name of the state to which these products were shipped. *See generally* Opp'n; *see also generally* Thurswell Decl.

Kitsch also cites to *Intercontinental Coffee Trading, LLC v. Eximware, Inc.* to support its argument that frequent communication with Kitsch is sufficient to establish purposeful availment. No. 22-CV-1841, 2023 WL 5667893 (S.D. Cal. 2023). According to Kitsch, the court in *Intercontinental Coffee* found that "there were sufficient contacts where the parties participated in monthly communications over the course of a ten-year relationship." Opp'n at 7. But Kitsch misreads *Intercontinental Coffee*. These monthly communications were not only limited to the parties; they extended to interactions between the nonresident party and resident consumers. *Intercontinental Coffee*, 2023 WL 5667893 at *8. In addition, other factors went in favor of the court's finding of purposeful availment; for instance, the nonresident party marketed and sold its services to California clients over numerous years. *Id*. Kitsch alleges no similar facts here. And in any case, *Intercontinental Coffee* is not binding on this Court. The case is therefore not applicable to the matter here. Kitsch thus fails to show that Blonde Comet availed itself to California's jurisdiction, and the Court finds that it has no personal jurisdiction.

Even if the Court found that Kitsch established purposeful availment, personal jurisdiction is still lacking. The second prong of the specific jurisdiction test is unsatisfied as Kitsch has not shown that its claim arises out of or relates to Blonde Comet's forum-related activities.[8] In its opposition, Kitsch reiterates the inadequate basis that Blonde Comet's contract with a California company means that it had sufficient contacts with the forum to establish jurisdiction. Opp'n at 8. But Kitsch offers no facts showing that the outstanding commissions that Blonde Comet allegedly sought were related to its activities *in California*—for example, that the commissions were for sales that Blonde Comet made to a California consumer on behalf of Kitsch. Thus, Kitsch still fails to allege personal jurisdiction.

---

[8] Although Blonde Comet offers no challenge to whether Kitsch meets the second prong of the specific jurisdiction test, for the purposes of the memo, an analysis of the second prong is provided. *See generally* Motion.

Furthermore, even if the Court found that Kitsch satisfies the second prong, Blonde Comet meets its burden of presenting a "compelling case" that an exercise of jurisdiction in California would be unreasonable. *Burger King*, 471 U.S. at 477. Under this third prong of the specific jurisdiction test, the Court evaluates the burden on Blonde Comet, the interstate judicial system's interest in obtaining the most efficient case resolution, California's interest in adjudicating the matter, Kitsch's interest in obtaining convenient and effective relief, and the shared interest of the several states in furthering fundamental substantive social policies. *Id*.

These factors are addressed in turn. The record shows that the burden on Blonde Comet would be substantial as it contends that it is a single-member Minnesota company and all witnesses relevant to its sales work with Kitsch are located in Minnesota. Reply at 5; Dkt. No. 22-2 ("Erickson Decl.") ¶ 7. For this same reason, this case cannot be resolved efficiently in California. Although California has an interest in adjudicating this matter, and Kitsch also has an interest in obtaining relief in the forum of its choice, the final factor weighs heavily in favor of Blonde Comet. *Burger King*, 471 U.S. at 473 ("A State generally has a 'manifest interest' in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors." (quoting *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). Given Blonde Comet's lack of forum contact and the contract's terms that it would solicit sales in specifically the Midwest for Kitsch, an exercise of jurisdiction in California would hinder rather than further the fundamental substantive social policy of "allow[ing] potential defendants to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

Thus, the Court finds that it lacks personal jurisdiction over Blonde Comet.

### IV.    Conclusion

For the foregoing reasons, the Court GRANTS the Motion to Dismiss (Dkt. No. 22) and ORDERS as follows:

1. Kitsch's 1AC (Dkt. No. 19) is DISMISSED.

IT IS SO ORDERED.

Dated: June 16, 2026

_____

MAAME EWUSI-MENSAH FRIMPONG

United States District Judge

16